FILED
JAN 10 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

RUSSIAN RECOVERY FUND LIMITED, RUSSIAN RECOVERY ADVISORS, L.L.C., Tax Matters Partner,

Complainant,

vs.

THE UNITED STATES,

Respondent.

Case No. 06-30 T

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

Russian Recovery Advisors, L.L.C., Tax Matters Partner for Russian Recovery Fund Limited, files this Complaint for Readjustment of Partnership Items against the United States, and for this cause of action states as follows:

**REQUIRED DISCLOSURES**

1. Russian Recovery Advisors, L.L.C. ("Russian Advisors") is a limited liability company incorporated under the laws of the State of Delaware with its address and principal place of business located at One Bow Street, Cambridge, Massachusetts, 02138. Its Employer Identification Number is 04-3460362.

2. Russian Advisors is the Tax Matters Partner ("TMP") for Russian Recovery Fund Limited ("RRF" or "the fund") for the tax year ended December 31, 2000.

3. RRF is a limited liability company incorporated under the laws of the Cayman Islands that has elected status as a partnership for federal income tax purposes. Its address and

principal place of business is in C/O Close Brothers (Cayman) Limited, Harbour Place, 103 South Church Street, P.O. Box 1034GT, Grand Cayman, Cayman Islands, BWI. Its Employer Identification Number is 98-0200985.

4. The RRF federal partnership return for the tax year ended December 31, 2000 was filed with the Philadelphia, Pennsylvania office of the Internal Revenue Service ("IRS") on August 14, 2001.

5. The Chicago, Illinois office of the IRS mailed to Russian Advisors a Notice of Final Partnership Administrative Adjustment ("FPAA") for the tax year ended December 31, 2000 on October 14, 2005.

**JURISDICTION**

6. Jurisdiction is proper in this Court pursuant to 26 U.S.C. § 6226(a) and 28 U.S.C. §§ 1364(a)(1), 1491(a)(1) and 1508. This action has been filed against the United States by the TMP within ninety (90) days after October 14, 2005, the day on which the FPAA for the tax year ended December 31, 2000 was mailed to Russian Advisors by the IRS.

7. Russian Advisors is not required to tender a deposit under 28 U.S.C. § 6226(c), because Russian Advisors' tax liability would not increase if the treatment of the partnership items on its tax return for the year ended December 31, 2000 was made consistent with the treatment of partnership items on the partnership return, as adjusted by the FPAA. However, because Bracebridge Capital, L.L.C. ("Bracebridge") is the sole member of Russian Advisors, a pass-through entity for tax purposes, a deposit in the aggregate amount of $50,000, including $36,608 of tax and $13,392 of interest, was made with the Boston, Massachusetts office of the IRS on January 10, 2006, representing a good faith estimate of the amount that the tax liability of

the direct and indirect partners of Bracebridge would increase if the treatment of the partnership items on their tax returns for the year ended December 31, 2000 were made consistent with the treatment of partnership items on the partnership return, as adjusted by the FPAA.

## STATEMENT OF FACTS

8. Russian Advisors relies on the following statements of fact as the basis for its assignments of error for the 2000 FPAA:

*Russian Market*

a. On August 17, 1998, the Russian government froze payment on certain of its obligations, declared a moratorium on certain of its debt and later proposed several regulatory restructuring measures. In the aftermath, various affected Russian instruments were significantly devalued and thereafter still subject to market value fluctuations as a consequence of the unstable and changing regulatory and economic environment in Russia.

*RRF and Subscription*

b. On December 18, 1998, RRF was created to provide diversification, economics of scale, and specialized expertise in the management of various Russian instruments contributed into the fund by the participating shareholders. Its purpose was to recover as much value as possible from the various Russian assets.

c. Russian Advisors acted as investment advisor to RRF by managing the assets in the fund. Bracebridge was the sole member of Russian Advisors and brought to RRF experienced principals from the Bracebridge group.

d. FFIP, L.P. ("FFIP"), a Delaware limited partnership, entered into a

subscription agreement with RRF on April 1, 1999 to purchase participating shares, contributing in-kind assets consisting of various credit-linked instruments related to Russian GKOs and OFZs (acronyms for specific types of Russian government-issued bonds). Its contributed assets had a fair market value of $1,946,982, and a tax basis of $2,149,274, equal to the tax basis that FFIP had in the assets. Later in September 1999, FFIP contributed additional in-kind assets, with a fair market value of $65,940, and a tax basis of $3,753,191. At that time, it also transferred its interest in RRF to FFI Fund Ltd. ("FFI").

e. Shortly after FFIP's initial contribution, on May 20, 1999, Nancy Zimmerman entered into a subscription agreement with RRF to purchase participating shares, contributing $100,000 in cash. In addition, on that day, Gabriel Sunshine entered into a subscription agreement to purchase participating shares, contributing $50,000 in cash.

f. Russian Advisors also subscribed for participating shares in RRF, contributing $50,000 in cash in May 1999 and an additional $250,000 in cash later in October 1999.

g. On May 20, 1999, Tiger Management, L.L.C. on behalf of related entities (the "Tiger entities") entered into subscription agreements with RRF to purchase participating shares, each of the Tiger entities contributing in-kind assets consisting of credit-linked instruments related to Russian Series 25023 OFZs (the "Russian 25023s"). The contributed assets had a fair market value of $14,960,669, and a tax basis of $231,756,330, equal to the tax basis that the Tiger entities had in the assets.

h. On June 1, 1999, a large non-profit endowment entered into a subscription agreement with RRF to purchase participating shares, contributing $250,000 in cash. It later

contributed in-kind assets consisting of credit-linked instruments related to Russian OFZs, GKOs and corporate bonds and Russian rubles, through FYI Ltd. ("FYI"), on September 1, 1999. The contributed assets had a fair market value of $2,963,295, and a tax basis significantly in excess of their fair market value. FYI is a Cayman Islands company that is classified as a corporation for federal income tax purposes.

i. Each of those investors subscribed to RRF with the expectation and intent that they would participate in the fund with the other investors in a joint effort to recover as much value as possible from the various Russian assets, sharing profits and losses as partners in the fund.

j. After the Tiger entities joined RRF, FFIP learned of their interest in selling their participating shares in RRF, and on June 4, 1999, FFIP acquired the Tiger entities' interests for $14,088,169 in cash, a discount from the contribution value.

k. On September 1, 1999, FFI entered into a subscription agreement with RRF to purchase participating shares and received a transfer of participating shares in RRF from certain related entities, including FFIP (as noted above), all of whom contributed into RRF in-kind assets consisting of various credit-linked instruments related to Russian OFZs, GKOs and corporate bonds and Russian rubles. The contributed assets had a fair market value of $10,286,705, and a tax basis of approximately $35 million, equal to the tax basis that FFI and the related entities had in the assets.

l. On December 16, 1999, an unrelated individual revocable trust ("Individual Trust") entered into a subscription agreement with RRF to purchase participating shares, contributing in-kind assets consisting of various credit-linked instruments related to

Russian GKOs. The contributed assets had a fair market value of $601,800, and a tax basis approximately equal to their fair market value.

m. Each of those additional investors subscribed to RRF with the expectation and intent that they would participate in the fund with the other investors in a joint effort to recover as much value as possible from the various Russian assets, sharing profits and losses as partners in the fund.

n. On February 1, 2000, FFI distributed its interest in RRF pro-rata to all of its partners, including FFIP, in partial redemption of its partners' interests. FFIP also acquired additional shares in RRF from other RRF partners for cash on November 1, 2000.

o. Throughout the subscription process described above, and going forward, Russian Advisors actively managed the Russian assets. During 1999 alone, RRF had, under United States Generally Accepted Accounting Principles, net income of $22,519,245, including realized and unrealized income and gains on the assets. Likewise, in calendar year 2000, RRF earned net income of $51,863,119. The annual return on investment was 142.46% for 1999 and 105.08% for 2000.

*2000 Transactions and Tax Return*

p. In four separate transactions in 2000 (among a number of others), RRF sold certain of the Russian 25023s in the fund, with an aggregate basis of $53,413,482, for $11,096,723. While those sales gave rise to a $7,470,066 book basis realized gain for RRF based on the market value of the assets at the time they were contributed to the fund, under federal income tax accounting rules, the fund realized aggregate losses of $42,316,759. This

included $49,786,826 of built-in losses that were allocated to FFIP as successor to the (formerly Tiger entities) participating shares issued in exchange for those assets.

q. On August 14, 2001, RRF filed its Form 1065 Partnership Return of Income for the tax year ended December 31, 2000, which was prepared by Ernst & Young LLP, its independent outside auditors. RRF reported $16,606,423 in Other Income losses, in part as a consequence of the $42,316,759 in losses realized on the above-described sales of certain of the Russian 25023s.

*IRS Audit and Assessments*

r. Dated September 28, 2005, the IRS issued to Russian Advisors, as the TMP for RRF, a Notice of Beginning of Administrative Proceeding for RRF for the tax year ended December 31, 2000. As part of its audit, the IRS issued a summons to Russian Advisors on October 14, 2005, requesting that it produce numerous documents related to RRF and its transactions over a five year period.

s. Dated October 14, 2005 (the same day as the summons), the IRS issued to Russian Advisors a Notice of Final Partnership Administrative Adjustment ("2000 FPAA") for RRF, proposing a $46,424,782 adjustment to Other Income on the RRF partnership return for the tax year ended December 31, 2000 related to losses arising from the sale of certain of the Russian 25023s. A true and accurate copy of the 2000 FPAA is attached hereto as Exhibit A, wherein the bases for the IRS determinations are disclosed and are incorporated herein.

**ASSIGNMENTS OF ERROR**

9. The IRS erred in all of its determinations in the 2000 FPAA. Each and every determination in its entirety was factually or legally incorrect and without adequate basis, foundation or support.

10. Concerning any determination with respect to the partnership return for the year ended December 31, 2000, the IRS erred because the applicable statute of limitations for the purpose of making any assessment of tax had expired, even prior to the mailing of the 2000 FPAA by the IRS to Russian Advisors, the TMP. Title 26, Section 6229 of the United States Code provides the applicable statute of limitations for assessing any tax attributable to any partnership item for a partnership taxable year. It states in substance that no such assessment shall be imposed beyond three years from the date on which the partnership return for such taxable year was filed or the last day for filing such return (without extensions), whichever is later. The latest date upon which the IRS could have made an assessment as provided by Section 6229 was August 14, 2004, since the partnership return was filed on August 14, 2001. The 2000 FPAA states that it was mailed on October 14, 2005 — one year and two months after the statute of limitations had already expired — and therefore any determination for the partnership items in the 2000 return is barred.

11. Concerning any determination in which the IRS determined that RRF and its partners failed to establish a stated proposition, the IRS erred because it made the determination prior to receipt of (and indeed, at the same time as its request for) documents from Russian Advisors that would have established the proposition. The IRS has since received the documents.

12. Concerning its first determination, the IRS erred because the sale of a portion of the section 988 assets actually occurred in fact and in substance.

13. Concerning its second determination, the IRS erred because the section 988 assets had a tax basis of $53,413,482, equal to the tax basis the contributing partner had in the assets.

14. Concerning its third determination, the IRS erred because the portion of the purported basis in the section 988 assets that exceeded the fair market value of such assets was properly allocated to FFIP as the successor partner of the (formerly Tiger entities) participating shares through which those assets were contributed to RRF.

15. Concerning its fourth determination, the IRS erred because any transaction concerning the section 988 loss was entered into for profit.

16. Concerning its fifth determination, the IRS erred because the allocation of the section 988 loss to FFIP was consistent with Section 704(c), as outlined in the second sentence of the eighth determination in the 2000 FPAA. RRF was not formed or availed of to substantially reduce the present value of the partners' federal tax liabilities, but was formed and availed of for the legitimate business purpose of managing the recovery of as much value as possible from the various Russian instruments; RRF should not be disregarded with respect to the claimed section 988 loss transaction; and FFI should be treated as a partner of RRF and to the extent that any portion of the claimed section 988 loss is attributable to a purported contribution of section 988 assets by FFI, such losses were properly allocated by RRF to FFI or its successors in interest, including FFIP.

17. Concerning its sixth determination, the IRS erred because the section 988 loss transaction was entered into with a legitimate business purpose and had economic substance and was not a sham; the section 988 loss transaction was created for the purpose of carrying on a business by partners and sharing profits and losses from such activities; and the transaction should not be disregarded for federal income tax purposes.

18. Concerning its seventh determination, the IRS erred because to the extent that any portion of the claimed section 988 loss is attributable to a purported contribution of section 988 assets by FFI, such losses were properly allocated by RRF to FFI or its successors in interest, including FFIP.

19. Concerning its eighth determination, the IRS erred because to the extent that any portion of the claimed section 988 loss is attributable to a purported contribution of section 988 assets by any partner other than FFIP, such assets were properly allocated to FFIP under the federal tax laws. Russian Advisors agrees with the second sentence in the determination as a general matter, which when applied to this circumstance specifically, as herein described, supports RRF's treatment of the section 988 loss.

20. Concerning its ninth determination, the IRS erred because at-risk amounts are determined at the partner and not the partnership level under Section 465.

21. Concerning its tenth determination, the IRS erred because FFIP made contributions to RRF during the year 2000 that increased its outside basis in RRF during the taxable year 2000.

22. Concerning its first penalty determination, the IRS erred because the adjustment

of partnership items of RRF were not attributable to a tax shelter within the meaning of I.R.C. § 6662(d)(2)(C)(ii); RRF and its members did not have as a significant purpose the avoidance or evasion of federal income tax; and they had substantial authority for the positions taken and a reasonable belief that those positions were more likely than not the correct treatment of such items.

23. Concerning its second penalty determination, the IRS erred because any underpayment of tax did not result from a substantial understatement, gross valuation misstatement or negligence or disregarded rules or regulations.

24. Concerning its third penalty determination, the IRS erred because RRF and its partners had reasonable cause and a good faith basis for any resulting underpayment.

25. Concerning its fourth penalty determination, the IRS erred because no accuracy-related penalty under Section 6662 is applicable as there were no underpayments of tax.

**WHEREFORE**, Russian Advisors respectfully prays that the Court enter judgment in its favor and against the United States, order the United States to reverse the adjustments set forth in the 2000 FPAA in the amount of $46,424,782 and return the deposit plus interest to Russian Advisors, and that the Court grant such other relief as it may deem just and appropriate under the circumstances.

Respectfully submitted,

RUSSIAN RECOVERY ADVISORS, L.L.C., Tax Matters Partner for RUSSIAN RECOVERY FUND LIMITED
By its attorneys,

Loretta R. Richard

Stephen E. Shay
Loretta R. Richard
John H. Ray, III
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

Dated: January 10, 2006

**Internal Revenue Service**

**Department of the Treasury**

Refer To:
Brenda Williams
Taxpayer Identifying Number

Name of Partnership:
Russian Recovery Fund Limited
Partnership Identifying Number:
98-0200985
Tax Year Ended
12/31/2000
Date FPAA Mailed to Tax Matters Partner:
OCT 14 2005
Person to Contact:
Brenda Williams
36-08840
Contact Hours:
8:00 a.m. - 4:30 p.m.
Contact Telephone Number:
312-566-2449

Date: OCT 14 2005

Russian Recovery Advisors, L.L.C
% Bracebridge Capital, L.L.C
Tax Matters Partner
Russian Recovery Fund Limited
One Bow Street
Cambridge, MA 02138

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Deula Williams

for Kevin Harris
Technical Services
Territory Manager

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

Form **870-PT** (Rev. 8-2004)

Department of the Treasury — Internal Revenue Service

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

IN REPLY REFER TO

Taxpayer(s) name(s), address and ZIP code:

Russian Recovery Advisors L.L.C.
% Bracebridge Capital, L.L.C
Tax Matters Partner
Russian Recovery Fund Limited
One Bow Street
Cambridge, MA. 02138

Taxpayer Identifying Number: 98-0200985

Name of Partnership: Russian Recovery Fund Limited

Taxpayer Identifying Number: 98-0200985

Name of Tax Matters Partner: Russian Recovery Advisors, L.L.C.

Tax Year(s) Ended: December 31 2000

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| | |
|---|---|
| Signature of Taxpayer | Date Signed |
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| | | |
|---|---|---|
| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
| | Office | Title |

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the waiver must be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

Department of the Treasury — Internal Revenue Service

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

## SCHEDULE OF ADJUSTMENTS

| | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| NAME OF PARTNERSHIP<br>Russian Recovery Fund Limited | 12/31/2000 | | |
| TAXPAYER IDENTIFYING NUMBER 98-0200385 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | | | |
| OTHER ADJUSTMENTS | [redacted] | | |
| A. Guaranteed payments to partner | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 21,516.00 | | |
| (3) CORRECTED | 21,516.00 | | |
| | [redacted] | | |
| B. Other income (loss) | | | |
| (1) ADJUSTMENT | 46,424,782.00 | | |
| (2) AS REPORTED | (16,606,423.00) | | |
| (3) CORRECTED | 29,818,359.00 | | |

REMARKS

"Exhibit A - Explanation of Adjustments is attached hereto and incorporated herein by this reference."

## Form 870-PT, Other Adjustments (Continued)

Page 4 of 4

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Russian Recovery Fund Limited | 12/31/2000 | | |
| TAXPAYER IDENTIFYING NUMBER 98-0200985 | | | |
| C. Interest expense on investment debts | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 8,015,992.00 | | |
| (3) CORRECTED | 8,015,992.00 | | |
| D. Gross income sourced at partner level | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 36,732,365.00 | | |
| (3) CORRECTED | 36,732,365.00 | | |
| E. Foreign taxes total foreign taxes paid / accrued | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 4,138.00 | | |
| (3) CORRECTED | 4,138.00 | | |
| F. Distributions - money (cash/securities) | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 6,039,915.00 | | |
| (3) CORRECTED | 6,039,915.00 | | |
| G. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

Exhibit A -- Explanation of Items
**Russian Recovery Fund Limited**
Final Partnership Administrative Adjustment Letter
Tax Year Ended – December 31, 2000 TIN: 98-0200985

1. It is determined that **Russian Recovery Fund Limited** [hereinafter RRF] and its purported partners have failed to establish that the purported sale or exchange or other disposition of a portion of the section 988 assets, resulting in a purported loss of $46,424,782, all of which was allocated to FFIP,LP [hereinafter referred to as the section 988 assets and the claimed section 988 loss] actually occurred in fact or in substance. Accordingly, the claimed section 988 loss is disallowed in full.

2. It is further determined that RRF and its partner(s) have failed to establish basis in the section 988 assets which were purportedly sold, exchanged or disposed of with regard to the claimed section 988 loss. Accordingly, such basis is determined to be the fair market value (FMV) of such assets at the time such assets were contributed to or acquired by RRF. In the absence of substantiation of the FMV of such assets, the value is determined to be equal to the reported sales proceeds received upon disposition of such assets. Accordingly the claimed section 988 loss is disallowed in full.

3. It is further determined that the portion of the purported basis in the section 988 assets that exceeds the fair market value of such assets (at the time of contribution to or acquisition by RRF) should be allocated, under IRC section 482, to an entity which is not RRF or any partner of RRF at the time such assets were purportedly sold, exchanged or disposed of. Accordingly, the claimed section 988 loss is disallowed in full.

4. It is further determined that the claimed section 988 loss has not been shown to be the result of a transaction entered into for profit and it therefore is not allowable under any provision of the Internal Revenue Code including, but not limited to, Section 165. Accordingly the claimed section 988 loss is disallowed in full.

5. It is further determined that, with regard to the purported transaction in which the section 988 assets were purportedly contributed to or otherwise acquired by RRF and then were sold, exchanged or otherwise disposed of by RRF and where the claimed section 988 loss on such disposition was allocated to FFIP,LP [hereinafter FFIP], RRF was formed or availed of to substantially reduce the present value of the partners' Federal tax liabilities, in a manner that is inconsistent with the

intendment of Subchapter K of the Code. As a result, under Treas. Reg. Section 1.701-2 the Commissioner has recast the Section 988 loss transaction to achieve tax results which are consistent with the intent of Subchapter K. In this regard, the Commissioner has determined, in the alternative, that:

a. RRF should be disregarded with respect to the claimed section 988 loss transaction, and the section 988 assets should be considered as if acquired, owned and disposed of by one or more partners in their individual capacities. Accordingly, the claimed section 988 loss is disallowed in full.
b. FFI Fund Ltd [hereinafter FFI Fund] should not be treated as a partner of RRF and to the extent that FFI Fund purportedly contributed any of the section 988 assets to RRF, such contribution shall instead be treated as a sale of such section 988 assets to RRF for their FMV. Accordingly, the basis of the section 988 assets purportedly contributed by FFI Fund is limited to their FMV which is presumed to be equal to the reported sales proceeds received upon disposition of such assets. Accordingly, the claimed section 988 loss, attributable to assets contributed by FFI Fund is disallowed in full.
c. The claimed section 988 loss should be disallowed to RRF as it does not reflect a true economic loss of the partnership or of any of its partners.

6. It is further determined that the claimed section 988 loss transaction (the contribution to, holding and disposition of the section 988 assets by RRF and the allocation of the claimed section 988 loss to FFIP), entered into by RRF, should be disregarded for Federal income tax purposes because it was a sham, lacked economic substance, was not created for the purpose of carrying on a business by partners or sharing profits and losses from such activities and was not created for a legitimate business purpose. In accordance with the economic substance, substance over form and/ or step transaction doctrine(s), it is determined that the purported section 988 loss transaction should not be respected as a partnership transaction. In this regard, to the extent such section 988 assets existed they should be treated as never having been acquired by RRF and any gain or loss on such assets (if any) should be treated as having been realized by the partner(s) in their individual capacities or by a person who is not a partner. Accordingly, the claimed section 988 loss is disallowed in full.
7. It is further determined that, with regard to the portion of the claimed section 988 loss which is attributable to a purported contribution of

section 988 assets by FFI Fund, the allocation of all of such claimed section 988 loss to FFIP is unreasonable and such loss should instead be allocated among the three partners who acquired the partnership interest of FFI Fund, in proportion to the percentage interest acquired from FFI Fund, in accordance with the authority of Treas. Reg. 1.704-3(a)(10).

8. It is further determined that, with regard to the portion of the claimed section 988 loss which is attributable to a purported contribution of section 988 assets by any partner other than FFIP, the allocation of all of such claimed 988 loss to FFIP is unreasonable and lacks substantial economic effect. Accordingly, it is determined that such portion of the section 988 loss should be allocated among the partners who contributed such section 988 assets in proportion to the built-in loss inherent in such assets, in accordance with the principles of Section 704(c) and Treas. Reg. 1.704-3(a)(10), and to the extent that the section 988 loss exceeds the built-in-loss inherent in such asset, such loss should be allocated in proportion to all the partners' interests in the partnership, in accordance with section 704(b) and Treas. Reg. 1.704-1(b).

9. Alternatively, it is further determined that the individual and corporate partners and flow-through partners of FFIP have failed to establish that they are at risk under IRC Section 465 with regard to the purported claimed section 988 loss transaction.

10. Alternatively, it is further determined that RRF and FFIP have failed to establish that FFIP made any contributions to RRF during the year 2000 or in any other manner increased its outside basis in RRF during the taxable year 2000.

Penalties

1. It is determined that the adjustments of partnership items of RRF are attributable to a tax shelter within the meaning of I.R.C. § 6662(d)((2)(C)(ii), that RRF and its members had, as a significant purpose, the avoidance or evasion of federal income tax, that they lacked substantial authority for the positions taken, and that they did not have a reasonable belief that those positions were more likely than not the correct treatment of such items.

2. It is also determined that all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) a substantial understatement, (2) a gross valuation

Exhibit A – Explanation of Items
**Russian Recovery Fund Limited**
Final Partnership Administrative Adjustment Letter
Tax Year Ended – December 31, 2000 TIN: 98-0200985

misstatement, or (3) negligence or disregarded rules or regulations.

3. In addition, it is determined that RRF and its partners did not have reasonable cause and good faith for any of the resulting underpayments, or that any other exceptions to the accuracy-related penalty apply.

4. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of RRF. The components of the accuracy-related penalty are imposed as follows:
   A. a 40 percent penalty is imposed on any portion of the underpayment that is attributable to a gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.
   B. a 20 percent penalty is imposed on any portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.
   C. a 20 percent penalty is imposed on any the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.
   D. a 20 percent penalty is imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.