# In the United States Court of Federal Claims

No. 06-30 T
(Consolidated with No. 06-35 T)
(Filed: October 28, 2011)
(Reissued: November 15, 2011)[1]

* * * * * * * * * * * * * * * * * * * * * *

RUSSIAN RECOVERY FUND LIMITED,
RUSSIAN RECOVERY ADVISORS,
L.L.C., Tax Matters Partner,

               *Plaintiffs*,

v.

THE UNITED STATES,

               *Defendant.*

* * * * * * * * * * * * * * * * * * * * * *

Partnership Tax; Tax Equity and Fiscal Responsibility Act, 26 U.S.C. §§ 6221 et. seq.; Final Partnership Administrative Adjustment; Statute of Limitations.

*Loretta R. Richard*, Boston, Massachusetts, for plaintiffs, with whom was *B. John Williams, Jr.,* Washington, DC.

*Robert J. Higgins*, Tax Division, Department of Justice, Washington, DC, for defendant, with whom were *John DiCicco*, Principal Deputy Assistant Attorney General, *Mary Abate*, Acting Chief, Court of Federal Claims Section, and *Bart D. Jeffress*, Trial Attorney, all on behalf of the Department of Justice.

## OPINION

BRUGGINK, *Judge*.

This Tax Equity and Fiscal Responsibility Act ("TEFRA"), 26 U.S.C. §§ 6221 - 6233 (2006), action is a petition for readjustment of partnership

---

[1]This opinion was filed under seal on October 28,2011. The parties conferred and chose to not offer redactions.

items brought under 26 U.S.C. § 6226(a)[2] by Russian Recovery Advisors, LLC ("RRA") as the tax matters partner for Russian Recovery Fund, LTD ("RRF"). Plaintiffs allege, among other contentions, that the Internal Revenue Service's ("IRS") issuance of a Final Partnership Administrative Adjustment ("FPAA") for the tax year ending December 31, 2000, was untimely and therefore invalid, and that the representative partners' 2000 and 2001 tax years are closed for adjustment and assessment.

In this case, we previously held it improper for an FPAA to adjust an individual partner's amount at-risk in its distributive share of non-recourse partnership liabilities and that the remedy for improper adjustment of a non-partnership item in a FPAA was not the invalidation of the FPAA. *See Russian Recovery Fund Ltd. v. United States*, 81 Fed. Cl. 793 (2008). We also held that plaintiffs' jurisdictional deposit as required under 26 U.S.C. § 6226(e) must include the potential increased tax liability for all tax years affected by the FPAA. *See* 90 Fed. Cl. 698 (2009).

Currently pending are cross motions for partial summary judgment on the 2000 tax year. At a status conference we agreed to limit the briefing to two representative partners: James DiBiase and Nancy Zimmerman. We heard oral argument on November 18, 2010, and the parties submitted supplemental briefing thereafter. For the reasons set out below, we grant plaintiffs' motion with regard to Mr. DiBiase and the partners he represents and deny plaintiffs' motion with regard to Ms. Zimmerman and the partners she represents. We also grant defendant's motion with regard to Ms. Zimmerman and the partners she represents and deny defendant's motion with regard to Mr. DiBiase and the partners he represents.

## BACKGROUND[3]

RRF is a limited liability company that has elected to be treated as a partnership for federal income tax purposes. It is therefore subject to TEFRA.

_____

[2]All subsequent references to the United States Code and sections within the code are to Title 26 and the Internal Revenue Code of 1986 as amended ("the Code") unless otherwise noted.

[3]These facts are drawn from the parties' proposed findings of uncontroverted fact and representations made at oral argument that were not disputed.

2

Because RRF is a TEFRA partnership, the IRS issues a FPAA to the partnership before the IRS may make assessments on individual partners.

RRF is part of a complex tiered partnership structure consisting of various pass-thru entities, partners, and indirect partners. One of RRF's direct partners, FFIP, is itself a TEFRA partnership. Bracebridge Capital, L.L.C., ("Bracebridge") is a direct partner of FFIP and an indirect partner of RRF. Ms. Zimmerman, one of the representative partners in this motion, is a direct partner of FFIP and an indirect partner of RRF through FFIP and various other entities. Mr. DiBiase, the other representative partner, is a direct partner of Bracebridge and an indirect partner of RRF.

RRF filed its 2000 tax return on August 14, 2001. In the 2000 tax year, RRF allocated $46,424,782 of net section 988 losses[4] to FFIP. On October 14, 2005, the IRS issued an FPAA to RRF for the 2000 tax year, proposing adjustments to RRF partnership items.[5] In the 2000 FPAA, the IRS proposed to characterize this $46,424,782 reported loss as "Other Income" on the 2000 RRF return, functionally disallowing all of the claimed losses that were allocated to FFIP.

FFIP, a partner of RRF and also a pass thru entity, filed its own 2000 partnership tax return on or before August 16, 2001. After netting the losses it received from RRF with its own losses, FFIP reported $4,205,838 in losses for the 2000 tax year and $25,272,185 in losses for the 2001 tax year. The original $46.4 million in section 988 losses that were allocated from RRF make up a large portion of both of these loss figures.

Meanwhile, Ms. Zimmerman, an indirect partner of RRF through FFIP as well as other entities, filed her original 2000 tax return more than three years prior to the FPAA. Ms. Zimmerman filed her 2001 tax return on October 15, 2002, however, less than three years before the FPAA was issued. For the 2001 tax year, FFIP, Bracebridge, and other pass-thru partners allocated various gains and losses to her, including a substantial amount of RRF section 988 losses from 2000. In other words, the bulk of the losses RRF allocated to

---

[4] 26 U.S.C. § 988 addresses foreign currency transactions. The type of loss (foreign or domestic) is not at issue in this motion.

[5] This date is more than three years after RRF filed its 2000 tax return on August 14, 2001.

FFIP in 2000 were not passed through in 2000, but were retained by FFIP until 2001, at which point the losses impacted Ms. Zimmerman's 2001 return. The proper treatment of this fact drives much of the parties' disagreement as to Ms. Zimmerman.

Mr. DiBiase, an indirect partner of RRF through two pass-thru entities, FFIP and Bracebridge, filed his 2000 return more than three years prior to the issuance of the FPAA. In that year, he reported $62 of section 988 net losses. He filed his 2001 return on August 15, 2002, also more than three years prior to the FPAA, and reported net losses of $6,676, which reflected $42,851 of the 2000 RRF losses that were passed through to him from FFIP via Bracebridge in 2001.

On May 10, 2005, FFIP, through its tax matters partner Bracebridge, entered into an extension agreement with the IRS on a form 872-P, Consent to Extend the Time to Assess Tax Attributable to Partnership. This extension allowed the IRS to "assess any federal income tax attributable to the partnership items of the partnership named above [FFIP] against any partner of the partnership for the period(s) ended December 31, 2001 at any time on or before August 31, 2006." Def. Cross Motion Ex. 5.

Beginning in 2005, the IRS performed an audit of FFIP's 2001 partnership return. During the course of this audit, the IRS made specific and detailed inquiries into the source of RRF's net section 988 losses reported on FFIP's 2001 tax return. The IRS completed the review of FFIP's 2001 partnership return and issued a "no adjustments" letter to FFIP.

Before the court are cross-motions for summary judgment with respect to the RRF 2000 tax year and the RRF indirect partners' 2001 tax year. Plaintiffs argue that the FPAA to RRF was untimely because the statute of limitations to assess any partners for losses adjusted due to the FPAA had already expired. Defendant has cross moved, seeking a declaration that the FPAA is timely and that the statute of limitations is still open to assess tax attributable to the RRF items for the representative partners with respect to their 2001 tax returns, because those returns were open on October 14, 2005, when the FPAA was initiated.

## DISCUSSION

This court has jurisdiction over a challenge to an FPAA pursuant to 26

U.S.C. § 6226(a)(3), which allows a tax matters partner to file "a petition for readjustment of the partnership items for such taxable year with the [Court of Federal Claims]." Russian Recovery Advisors is the tax matters partner for RRF and appropriately filed this proceeding to protest the FPAA issued to RRF by the IRS for RRF's 2000 tax year.

## I.      The plaintiffs have standing.

We must first address defendant's assertion that RRA, as tax matters partner to RRF, lacks standing to assert the statute of limitations defense on behalf of indirect partners. Because each partner is considered a party to the action, 26 U.S.C. § 6226(c), defendant argues that Ms. Zimmerman and Mr. DiBiase potentially could raise the defense for themselves, and therefore it is inappropriate for the tax matters partner to raise it for them.

Although the parties point to no direct precedent in which a court has ruled on whether the tax matters partner may raise the limitations defense for individual partners, there are numerous cases in which the tax matters partner has raised the defense for individual partners and courts did not question the tax matters partner's standing. *E.g.*, *AD Global Fund, LLC. v. United States*, 481 F.3d 1351 (Fed. Cir 2007); *Blak Invs. v. Comm'r*, 133 T.C. 431 (2009). Further, when a partner attempts to raise the statute of limitations defense at a partner level proceeding, it is foreclosed because the defense must be raised in the partnership level proceeding. *E.g., Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010); *Chimblo v. Comm'r*, 177 F.3d 119, 125 (2nd Cir. 1998).

In *Keener v. United States*, 551 F.3d 1358 (Fed. Cir. 2009) , the Federal Circuit held that the subject of a statute of limitations defense is appropriately viewed as a partnership item and handled in a partnership proceeding as opposed to a partner-level proceeding. *Id.* at 1364 ("To remain consistent with this structure, the limitations claim raised by Taxpayers should not be litigated in a partner-level proceeding because it affects the partnership as a whole."). Moreover, section 6221 provides that "[e]xcept as otherwise provided in this subchapter, the tax treatment of any partnership item . . . shall be determined at the partnership level." 26 U.S.C. § 6221 (2006). We read *Keener* and section 6221 together to mean that it is necessary for a statute of limitations defense, as a partnership item, to be raised in the partnership-level proceeding.

Section 6226 addresses this court's review of FPAAs. Section 6226(f) provides us with jurisdiction to "determine all partnership items of the partnership for the partnership taxable year . . . ." The flush language below Section 6226(d)(1)(B) states that:

> Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

26 U.S.C. § 6226(d)(1)(B) (2006). Thus, while the statute allows partners other than the tax matters partner to raise a statute of limitations defense, it does not prevent the tax matters partner from raising the defense on their behalf.

The tax matters partner is entrusted with fiduciary responsibility on behalf of the partners throughout the partnership level proceeding, therefore, it is appropriate that the tax matters partner should raise a statute of limitations defense on behalf of the indirect partners it is representing throughout the litigation. *See Computer Programs Lambda, Ltd. v. Comm'r*, 89 T.C. 198, 205 (1987) (explaining that the tax matters partner is "the central figure of partnership proceedings," including potentially binding partners who are not notice partners; "[i]n the execution of these responsibilities, a tax matters partner acts as a fiduciary."). In light of the overarching TEFRA scheme to simplify the proceedings surrounding partnership taxation, as well as the decisions in which the tax matters partner raised partners' statute of limitations defense, we find that it would undermine TEFRA to require each individual partner to assert a statute of limitations defense.

## II.   The parties' cross motions for summary judgment

Plaintiffs assert that under sections 6229 and 6501 summary judgment is appropriate because the FPAA had to be issued within three years of RRF filing its 2000 return to be effective. RRF's 2000 partnership return was received by the IRS on August 17, 2001. The RRF FPAA was issued October 14, 2005. Thus, the IRS issued the 2000 FPAA to RRF more than three years

after RRF filed its 2000 return.  Plaintiffs contend that this is sufficient to rule the FPAA untimely to assess taxes against any of RRF's direct or indirect partners.

Defendant responds that there is no particular limitations period within the IRC for the issuance of an FPAA.  Consequently, any partner's tax return that is open under the three-year limitations period, found in section 6501(a), at the time the FPAA is issued may be adjusted by that FPAA.  In defendant's view the IRS may assess additional tax against any of the disallowed RRF losses used on Ms. Zimmerman's and Mr. DiBiase's 2001 individual returns, even though the FPAA was directed at RRF's 2000 return.

The facts for Ms. Zimmerman are that, on October 25, 2002, when her 2001 return was received, or, at the earliest, October 15, 2002, when her 2001 return was mailed, Ms. Zimmerman and her spouse filed their joint 2001 individual income tax return.  The RRF FPAA, issued October 14, 2005, was within three-years of either date.  Thus, according to defendant, the FPAA suspended the running of the section 6501(a) statute of limitations, meaning that Ms. Zimmerman's 2001 return is still open for assessment insofar as it reflects any tax attributable to a partnership or affected item that can be traced to RRF's 2000 return.

The facts as to Mr. DiBiase are not the same.  On August 15, 2002, Mr. DiBiase filed his 2001 individual tax return.  The RRF FPAA was therefore issued more than three years after Mr. DiBiase filed his return.  Defendant argues, nonetheless, that the return remains open for assessment even though Mr. DiBiase filed it more than three years before the IRS issued the FPAA.  Defendant's analysis of the application of the 2000 RRF FPAA to Mr. DiBiase relies on the FFIP agreement to extend the limitations period for assessing Mr. DiBiase's 2001 individual return.

FFIP entered into an agreement with the IRS to voluntarily extend the statue of limitations for assessing tax on FFIP partners' returns for FFIP partnership items until August 31, 2006.  Defendant argues that the losses claimed in 2001 on FFIP's return are RRF affected items, causing the statute of limitations as to Mr. DiBiase to be suspended by the issuance of the FPAA.  This argument is predicated on defendant's claim that the section 988 losses reflected on the FFIP 2001 return are simultaneously RRF affected partnership items insofar as the losses are reflected in Mr. DiBiase's return.

Plaintiffs disagree. They contend that, to reach the losses on Mr. DiBiase's return under the extension agreement, the IRS had to issue an FPAA to FFIP rather than to RRF because the agreement only provides an extension for taxes attributable to the FFIP 2001 partnership return. As part of their argument, plaintiffs assert that, after FFIP carried the 2000 RRF losses forward, they became 2001 FFIP partnership items, requiring the IRS to issue an FPAA to FFIP and investigate the losses in an FFIP partnership proceeding. Plaintiffs believe, therefore, that we do not have jurisdiction over adjustments to either partner's 2001 returns because we only have jurisdiction over RRF partnership items in this proceeding, not FFIP partnership items.

Defendant responds that the carry-over of RRF losses by FFIP does not sever the connection to the 2000 RRF return because the impact on Ms. Zimmerman's or Mr. DiBiase's 2001 return is made merely through a computational adjustment. Defendant further argues that it was required to issue the FPAA to RRF because the adjustment could not be made at the FFIP partnership level.

Because much of the disagreement between plaintiffs and defendant centers on the reach of the 2000 RRF FPAA, we will first determine whether the FPAA had to be issued within three years of RRF filing its 2000 partnership return to be effective. Then we will ascertain whether the 2000 FPAA to RRF could adjust losses that were reported on RRF's 2000 tax return and then assigned to FFIP and carried forward by FFIP into the 2001 tax year. Finally, we will decide whether Mr. DiBiase's and Ms. Zimmerman's 2001 individual tax returns remain open for assessment.

## A. Was the 2000 FPAA "timely"?

While plaintiffs assert that the FPAA was untimely, we consider it settled that nothing in the statutory scheme of TEFRA demands that an FPAA be issued within a certain time period. RRF filed its 2000 return more than three years before the IRS issued the FPAA. It is, therefore, undisputed that the minimum period specified in Section 6229(a) for assessing tax on RRF partnership items had passed. Consequently, plaintiffs argue, the three year period has also run with respect to Ms. Zimmerman and Mr. DiBiase for assessing tax "attributable to any partnership item" for RRF's 2000 partnership year. Defendant responds that the IRS may issue an FPAA at anytime but acknowledges that it may only assess partners for tax years that were open when the FPAA was issued. The parties' real argument, therefore, lies not in

8

whether the FPAA may be considered timely more than three years after RRF filed its 2000 partnership return, but whether the period for assessment has expired.

Generally, two statutes pertain to the timeliness of assessing taxes in TEFRA actions. *See AD Global Fund,* 481 F.3d at 1353-54; *see also Curr-Spec Partners v. Comm.*, 579 F.3d 391, 396 (5th Cir. 2009). The first is section 6501, which requires the IRS to assess all taxes within three years of the taxpayer's filing of his individual return. 26 U.S.C. § 6501(a) (2006). The second is Section 6229, which deals specifically with partnership items. Section 6229(a) provides that the time to assess tax "attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years" after the partnership return was filed or the last day the partnership return could have been filed. 26 U.S.C. § 6229(a) (2006).

In *AD Global Fund*, the Federal Circuit held that Section 6229(a) does not create a separate statute of limitations for partnership items. *AD Global Fund*, 481 F.3d at 1355. Rather, section 6229 offers a potential extension for the statute of limitations found in section 6501. While section 6501 describes the general three-year statute of limitations for assessing tax, section 6229(a) guarantees a minimum period, which can potentially extend the 6501 period, to assess partnership items. *Id.* at 1354 ("Reading §6229(a) together with §6501, we conclude that §6229(a) unambiguously sets forth a minimum period for assessments of partnership items that may extend the regular statute of limitations in §6501.").

The Federal Circuit rejected the taxpayer's argument–the same argument made by plaintiffs in this case–that section 6229(a) sets forward a statute of limitations for partnership items separate from the period in section 6501. It held that section 6229(a) and section 6501 operate together to create a minimum, not a maximum, period to assess partnership items. Adjustments under the statutory scheme of TEFRA, therefore, will be made to partnership items at a partnership level proceeding whenever the FPAA is issued, and assessments will then be made at the level of the individual partners whose statute of limitations could be extended due to operation of section 6229.

The Fifth Circuit recently interpreted *AD Global* in a dispute similar to the case at bar. The FPAA in *Curr-Spec* was issued more than three years after the partnership return was filed. 579 F.3d at 393. The Fifth Circuit

agreed with the Federal Circuit, holding that Sections 6501 and 6229(a) work together and Section 6229 does not create a separate statute of limitations for the issuance of an FPAA. *Id.*; *see also G-5 Inv. P'ship v. Comm'r*, 128 T.C. 186, 189 (2007) ("TEFRA partnership provisions do not contain a period of limitations within which an FPAA must be issued . . . .").

The relevant question, then, is whether the FPAA was issued at a point when the statute of limitations had not run for an individual partner's return. Mr. DiBiase's return is open only if defendant is correct that the extension agreement with FFIP acted to extend the limitations period for assessing his individual return. Because the analysis of the FFIP extension agreement must be performed independent of the other issues, we will analyze the plaintiffs separately, saving Mr. DiBiase and the extension agreement for last.

Ms. Zimmerman's 2001 return, however, was open at the time the IRS issued the FPAA for the RRF 2000 partnership return. This fact would appear to be sufficient to answer the question as to Ms. Zimmerman. Plaintiffs contend, however, that the transmission of RRF's losses to Ms. Zimmerman via FFIP *in a different tax year* breaks the necessary connection between her 2001 tax return and RRF's 2000 return. We examine that question below in Part C. Because we have found the FPAA timely as to Ms. Zimmerman's 2001 return, we must determine whether the IRS issued the FPAA to the correct partnership to adjust Ms. Zimmerman's individual 2001 return.

**B.    Did the issuance of an FPAA for RRF's 2000 partnership return act to suspend the statute of limitations for the partners' 2001 individual returns?**

As discussed above, once the FPAA was issued to RRF, section 6229(d) suspended the 6501(a) limitations period with respect to any then-open individual partners' returns. The statute of limitations for assessing RRF partnership (or affected) items has been effectively suspended:

> (1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and
> (2) for 1 year thereafter.

26 U.S.C. § 6229(d)(1), (2) (2006); *see* 26 U.S.C. § 6226 (2006) (providing the

time period for the tax matters partner or any other partner to contest the content and issuance of an FPAA). Thus, once the FPAA was issued to RRF for the 2000 tax year, individual tax returns whose statute of limitations had yet to run and that utilized any losses "attributable to" 2000 RRF partnership or affected items had their statute of limitations suspended until one year after the final decision in this case. To say it differently, the 2000 FPAA did not reopen for assessment years in which the statute of limitations had run on the individual returns, but it suspended the running of the statute of limitations on the individual returns for years that were open for assessment when the FPAA was issued.

It is established that Ms. Zimmerman's 2001 return was filed less than three years prior to the issuance of the FPAA. Under Section 6229(d), therefore, the statute of limitation for assessing her 2001 return for "any tax imposed . . . which is attributable to any partnership item (or affected item) for a partnership taxable year," 26 U.S.C. § 6229(a), has been suspended until one year after this court's final decision.

Plaintiffs' real argument, however, is that even if Ms. Zimmerman's 2001 individual return was open for assessment, the losses reflected on her return were not "attributable to"the losses disallowed by the RRF 2000 FPAA under 26 U.S.C. § 6229(a). Plaintiffs assert that the interjection of the FFIP 2001 partnership year transforms the 2000 RRF partnership item exclusively into a 2001 FFIP partnership item. Due to the distribution of the losses by FFIP to plaintiffs in 2001, plaintiffs argue the losses cannot be "attributable to" the RRF 2000 partnership item disallowed in the FPAA. We therefore must determine how to apply the term "attributable to" as used in 26 U.S.C. § 6229(a).

**C. Was the FPAA directed at RRF effective to reach Ms. Zimmerman's 2001 return?**

Plaintiffs argue that the IRS could only have assessed the losses on Ms. Zimmerman's 2001 return by issuing an FPAA to FFIP for the 2001 tax year. Defendant responds that the losses must be adjusted at their source, RRF, not at FFIP, a second tier partnership. The question, therefore, is whether after FFIP carried the losses forward into 2001, they ceased to be RRF partnership items and moved beyond the reach of an RRF partnership proceeding.

Plaintiffs are correct that the IRS can issue multiple FPAAs in tiered

partnership situations, and in fact did so here.[6]  An FPAA to FFIP would be an inappropriate method for disallowing RRF losses, however.  Here, RRF is the source of the losses; it allocated losses to FFIP, a pass-thru entity, to pass on to its indirect partners.  The fact that it did not do so until the following tax year should not affect the outcome.

The Tax Court has explained the necessity of directing an FPAA to the higher level partnership–here RRF.  In *Sente Investment Club Partnership v. Commissioner*, 95 T.C. 243 (1990), Sente, a partnership itself, was a partner in Union Energy Drilling Fund 1983 ("Drilling") as well as a partner in Sente Equipment Ltd. ("Equipment").  Sente filed its partnership return in 1983, claiming flow-through losses from both of the partnerships.  The IRS issued an FPAA to Sente that "disallowed all of the ordinary losses Sente reported . . . even though most of these amounts were partnership items of Equipment and Drilling that had been separately adjusted" by the FPAAs issued to those partnerships.  *Id.* at 246-47.  Sente challenged in Tax Court the disallowance of losses that were considered Equipment and Drilling partnership items.  The Tax Court reminded the parties that "partnership losses . . . are . . . partnership items" of the partnerships that initially reported the losses.  *Id.* at 247.  The Tax Court held that losses disallowed in FPAAs to Equipment and Drilling were properly determined in those partnerships' respective proceedings: "Accordingly, any changes in the tax liability of Sente partners resulting from adjustments to the partnership returns of Equipment and Drilling are to be treated as computational adjustments."  *Id.* at 249.

The court held that Sente and any other partner of Equipment or Drilling could contest the respective FPAA in the appropriate partnership level proceeding, but it could not contest Equipment's or Drilling's partnership allocations at a partner level proceeding.  *Id.* at 248-49.  For the FPAA to be challenged in the appropriate partnership level proceeding, therefore, *Sente* explains that the IRS must adjust a partnership item at the partnership level that first produces the loss (or gain) in question.  *See id.*  To apply that reasoning here, in other words, because RRF generated the Section 988 losses and then made a partnership allocation to FFIP, the IRS must adjust the Section 988 losses at the RRF partnership level.

---

[6] The IRS did initiate such a review, but closed it without making an adjustment to the pass-thru losses at issue in this case.

In *Kligfield Holdings v. Commissioner*, the Tax Court examined whether "the Commissioner has the power to adjust . . . partnership items with an eye to determining a deficiency [in a later year]." 128 T.C. 192, 202 (2007). In *Kligfield*, like the case currently before this court, an FPAA was issued to adjust partnership items in a closed year in order to assess a deficiency in a partner's later year return. The court considered that the language of 26 U.S.C. § 6229(a) refers to "adjustment[s]" and modifies the three-year limitation period for assessments in 26 U.S.C. 6501. *Id.* at 205. Reading these sections together, the *Kligfield* court found that the difference in language indicates that "Congress anticipated that the taxable year in which an assessment is made would not always be the same as the taxable year in which the adjustments are made." *Id.*

Other provisions in the code strengthen this conclusion. For example, if this court eventually finds the FPAA valid, we would apply the results to the taxpayers, irrespective of whether the losses became partnership items of other partnerships: "All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an *indirect partner* shall be treated as computational adjustments." 26 U.S.C. § 6231(a)(6) (2006) (emphasis added). Likewise, in considering the limitations period, we are not determining and allocating partnership items. Rather, we are tracing partnership items from the source down to the indirect partners in order to consider whether individual partners owe any tax.

We find *Kligfield* and *Sente* persuasive and apply the same reasoning here. Under TEFRA, losses must be disallowed at their point of origin.[7] Plaintiffs' argument for the issuance of multiple FPAAs is unconvincing. The IRS could have issued an FPAA to FFIP, but to adjust the losses, an FPAA must be issued at their source, here RRF.[8] The issuance of the FPAA to RRF had the effect of disallowing the section 988 losses in 2000. Whether it was necessary, as plaintiffs argue, to issue an FPAA to FFIP for the 2001 tax year in order to assess taxes that originate with the disallowed RRF 2000 section 988 losses will be discussed below.

---

[7] We recognize that all that can be at issue in this case are RRF partnership or affected items.

[8] *See supra* note 6.

13

**D.    Are the losses reflected on Ms. Zimmerman's 2001 individual return "attributable to" the disallowed RRF 2000 losses?**

Pursuant to section 6229, the period for assessing taxes attributable to any 2000 RRF partnership or affected items was suspended when the 2000 FPAA was issued.  Additionally, Ms. Zimmerman's 2001 individual tax return was filed within three years of the FPAA.  The question remaining as to Ms. Zimmerman, then, is whether her 2001 tax return reflects any tax "attributable to" an RRF partnership item or affected item as defined in Section 6229.

The Federal Circuit has defined "attributable to" as the term is used elsewhere in the IRC.  *See Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327 (Fed. Cir. 2007)*; Keener v. United States*, 552 F.3d 1358 (Fed. Cir. 2009)*.*  Using that definition, defendant asserts, means that losses on Ms. Zimmerman's 2001 tax return are "attributable to" the disallowed RRF losses.  Plaintiffs respond that defendant's reading of "attributable to" amounts to a "but for" test, the use of which the Federal Circuit has cautioned against in determining the origination point of tax losses.  That is, Ms. Zimmerman's taxes should not be analyzed by asking "but for RRF's reported section 988 losses, would there be losses on Ms. Zimmerman's return?"  Plaintiffs further this argument with the assertion that the Federal Circuit has rejected the tracing of losses from one tax year to another.

In addition, plaintiffs argue that the losses reported on Ms. Zimmerman's 2001 return cannot be "attributable to" the disallowed losses in the 2000 RRF FPAA under the principle of annual accounting, which they contend favors limiting the reach of an FPAA to a single year.  Defendant argues that annual accounting is not an immutable principle of tax law, and that the clear statutory language allows the IRS to assess tax attributable to the 2000 RRF items on Ms. Zimmerman's 2001 tax return.

In order to address these arguments, we will first define the phrase "attributable to" as it is used in section 6229.  We will then examine whether the Federal Circuit has rejected a "but for" test to determine the origin of tax losses or rejected the tracing of tax losses.  Finally, we will determine if the application of the annual accounting principle prevents attributing the losses on Ms. Zimmerman's 2001 return to the losses disallowed in the 2000 RRF FPAA.

## 1. The definition of "attributable to"

The Federal Circuit has interpreted the phrase "attributable to" as it appears in various places in the tax code, but not in the context of Section 6229. In *Electrolux Holdings*, while evaluating section 6511(d)(2)(A), it determined that the phrase "attributable to" "is not defined anywhere in the Code and has no special technical meaning under the tax laws." *Id.* at 1330. Because it has no special definition, the Circuit defined the phrase as "due to, caused by, or generated by." *Id.* at 1331. It subsequently adopted the same reading in applying Section 7422(h). Citing *Electrolux*, the court determined that the applicability of the section "turns on whether Taxpayers' refund claims are 'due to, caused by, or generated by' a partnership item." *Keener*, 552 F.3d at 1365. Plaintiffs offer no justification for a different use of the phrase here. Consequently, substituting the definition into Section 6229 yields "the period for assessing any tax . . . which is [due to, caused by, or generated by] any partnership item (or affected item) for a partnership taxable year . . . ."

## 2. Plaintiffs' "but for" and tracing arguments

Plaintiffs contend that this straight forward application of "attributable to" runs afoul of the Federal Circuit's admonition against a "but for" test. They point to *Prochorenko v. United States*, 243 F.3d 1359 (Fed. Cir. 2001). We disagree. In *Prochorenko*, the court stated that the phrase "attributable to" cannot be construed "so broadly as to cover claims that depend on the unique circumstances of an individual partner, that only affect that partner . . . ." *Id.* at 1363. This does not amount to a blanket rejection of a "but for" test. The court concluded that the Prochorenkos' claim that they were entitled to a reduction in partnership taxes under section 6224(c)(2) is not a suit for a refund "attributable to" a partnership item, but merely a "claimed right to a consistent settlement." *Id.* In fact, *Prochorenko* reaffirmed the principle that partnership items must be dealt with at a partnership level proceeding. The decisions in *Electrolux* and *Keener* post-date *Prochorenko* and suggest no inconsistency.

Plaintiffs next rely upon *Electrolux* to argue that the Federal Circuit has specifically rejected the idea of tracing losses, suggesting that defendant's use of a "but for" test would cause tracing. Once again, we disagree. In *Electrolux*, the Federal Circuit addressed a refund claim based on a net capital loss carry over under Section 1212(a). The taxpayer received a capital loss in 1994, then carried it back to 1993. The taxpayer still had unused 1994 capital

losses remaining and carried them forward to 1995.  The taxpayer argued that, under the statute, they were forced to carry back their capital loss before they could carry the loss forward.  The refund for the loss was, therefore, attributable to the 1993 carry back.

The court rejected this theory, deciding that the "overpayment was not 'due to, caused by, or generated by' the carryback of the 1994 capital loss to 1993 and thus was not 'attributable to' a capital loss carryback."  *Electrolux*, 491 F.3d at 1333.  While discussing cases that allowed tracing, such as *First Chicago v. United States*, 742 F.2d 1103 (7th Cir. 1984) and *Marshalltown Savings & Loan Ass'n v. United States*, 1991 U.S. Dist. LEXIS 19428 (S.D. Iowa Dec. 31, 1991), the court refrained from explicitly adopting or rejecting the idea of tracing.  Rather, it examined arguments from both sides regarding the adoption of the theory and decided that:

> [w]hatever may be the merits of these arguments, they cannot carry weight in the face of a statutory provision that is clear on its face.  The statute addresses only overpayments attributable to a carryback.  If there are problems with how that provision functions in the real world of tax accounting, that is a problem that must be addressed by congress.

*Electrolux*, 491 F.3d at 1333.  The Federal Circuit thus declined to rule on the propriety of tracing losses, but rather relied on the statutory language that the loss had to be attributable to a capital loss carryback, meaning it had to be due to, caused by, or generated by a carryback.  Because the loss was not attributable to the carryback, the Federal Circuit ruled against the plaintiffs. *Id.* We thus disagree with plaintiffs' interpretation of *Electrolux*, and find that *Electrolux*, in the context of this case, provides us with the definition of "attributable to" as well as a reaffirmation of our ruling on the plain meaning of the statutory language.

### 3. The application of the annual accounting principle

At oral argument and in its supplemental brief, plaintiffs argued that the "annual accounting principle" prevents the phrase "attributable to" in section 6229(a) from spanning multiple years.  Thus, per plaintiff, it would be inappropriate for an FPAA issued for the 2000 tax year to affect tax returns that reflect items FFIP carried over into 2001 and then distributed to RRF's indirect partners.

16

Defendant argues that plaintiffs exaggerate the importance and applicability of the annual accounting principle, directing us to several exceptions to the annual accounting rule.  It contends that the TEFRA statutory scheme takes account of tax effects in multiple years.  We agree.

The baseline case regarding the annual accounting principle is the Supreme Court's 1931 decision in *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359 (1931).  In *Burnet*, the Court stated that it is essential for the tax system to have regular intervals at which the government may determine the taxes owed by individuals.  *Id.* at 365.  That period is a year.  In other words, taxes are assessed and accounted for one year at a time.  *See id.*  Losses and gains occur in one year and do not, unless there is a specific rule to the contrary, affect each other across tax years.  The Supreme Court has not unswervingly adhered to this principle, however, as "strict adherence to an annual accounting system would create transactional inequities."  *Hillsboro Nat'l Bank v. Comm'r*, 460 U.S. 370, 377 (1983).  For instance, in *Hillsboro*, the Court acknowledged that the tax benefit rule violated the annual accounting principle.  *See id.* at 378.  The tax benefit rule requires the recognition of income in a current year when a deduction in a previous year is inconsistent with the current treatment.  While it is correct that annual accounting is still an underlying principle that is "an integral part of the tax code," *United States v. Skelly Oil Co.*, 394 U.S. 678, 681 (1969),  the Court desired to "avoid the possible distortions of income" that could occur if the annual accounting principle were blindly followed.  *Hillsboro*, 460 U.S. at 378.

Plaintiffs primarily rely upon the recent decision in *Prestop Holdings, LLC v. U.S.,* 96 Fed. Cl. 244 (2010), and argue that accepting defendant's position would create an exception to the annual accounting principle by allowing the "attributable to" language to span multiple tax years.  The *Prestop* court disagreed with our prior ruling in this case regarding the calculation of plaintiffs' jurisdictional deposit.[9]  In *Prestop*, the court determined that the

---

[9] We respectfully disagree with the *Prestop* opinion.  Although well reasoned, the *Prestop* opinion failed to address our reliance on applicable regulations and the Treasury's interpretation of its regulations.  As since decided in *Mayo v. United States*, 131 S.Ct. 704 (2011) and referenced by the Federal Circuit in *Grapevine Imports, Ltd. v. United States*, 636 F.3d 1368, 1376 (Fed. Cir. 2011), regulations adopted pursuant to a statutory grant are

protesting partner was not required to make a jurisdictional deposit that represented the change in his tax liability for all affected years. *Id.* at 258. Rather, the jurisdictional deposit only had to represent the tax adjustment that occurred in the tax year for which the FPAA was issued. *Id.* We came to the opposite conclusion in this case when defendant challenged plaintiffs' jurisdictional deposit. *See Russian Recovery Fund*, 90 Fed. Cl. at 706.

The prior holding in this case and the *Prestop* court's holding represent the application of Section 6226(e)(1). If either case were dispositive to the current issue, there would be no need for further discussion because the issue would have been resolved by our prior opinion. We also note that the *Prestop* court acknowledged that a FPAA can adjust multiple taxable years of a partner. *See* 96 Fed. Cl. at 254 n.26 ("[I]t is irrelevant that the adjustment of a partnership item for one partnership taxable year can lead to computational adjustments being made in the partner's later taxable years under section 6230 of the Code. That result, of course, is at the heart of the TEFRA model, which envisions the unified resolution of the tax treatment of partnership items at the partnership level, to be followed by corresponding adjustments to the partners' returns.").

It is evident that an FPAA in one given year can have far-reaching effects on an individual partner's return. *Curr-Spec Partners*, 579 F.3d at 399 ("the Commissioner may issue an FPAA at any time, subject only to the practical limitation that the FPAA may affect only those partners whose individual returns remain open under IRC § 6501(a)"); *Kligfield v. C.I.R.*, 128 T.C. 192, 205-207 (2007) (allowing an FPAA issued for a partnership year to affect the return of a partner's individual return in a later year). We hold, therefore, that the annual accounting principle does not prevent the losses on Ms. Zimmerman's 2001 return from being "attributable to" the losses disallowed by the RRF 2000 FPAA.

**E.     May Ms. Zimmerman be assessed taxes on her 2001 individual return?**

Applying the above holdings as to the question of section 6229(d) yields the following result. The issuance of the FPAA to RRF on October 14, 2005, suspended the statute of limitations for assessing any tax that is due to,

---

entitled to a high level of deference.

caused by, or generated by any RRF partnership or affected items from the RRF 2000 tax year. As long as the individual partner's statute of limitations had not run prior to the issuance of the FPAA, that partner may be assessed. Simply put, this means that Ms. Zimmerman's 2001 tax return, insofar as it reflects tax attributable to 2000 RRF partnership or affected items, is still open for assessment.

It does not matter if the disallowed losses are also FFIP partnership items in 2001 because that fact does not prevent the FPAA from disallowing the losses at the RRF origination point and then assessing Ms. Zimmerman's 2001 tax return through a computational adjustment. We agree with defendant that if it is demonstrated that the losses from RRF's 2000 tax return can be traced to Ms. Zimmerman's 2001 tax return then defendant may assess additional taxes. We therefore hold that the FPAA issued to RRF in 2000 validly suspended the limitation period for assessing Ms. Zimmerman's 2001 individual tax return.

### F. Did the FFIP extension agreement allow the 2000 RRF FPAA to suspend the limitations period for Mr. DiBiase's 2001 Return?

We reach a different conclusion as to Mr. DiBiase. Although Mr. DiBiase filed his 2001 tax return more than three years prior to issuance of the FPAA, defendant argues that it still may appropriately assess Mr. DiBiase for tax attributable to RRF 2000 partnership items. Defendant relies on the extension agreement, Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Partnership, which FFIP entered into in 2005. It extends the assessment period for "any federal income tax attributable to the *partnership items of the partnership named above* against any partner of the partnership . . . ." Def. Cross Motion Ex. 5 (emphasis added). Defendant contends that the losses reflected on Mr. DiBiase's return are covered by the FFIP extension agreement despite the fact that they originated with RRF in 2000, whereas the partner named above is plainly FFIP. Plaintiffs respond that the extension agreement only applied to FFIP partnership items and is irrelevant in this RRF proceeding. For the following reasons, we agree with plaintiffs.

RRF assigned $46,424,782 section 988 losses to FFIP in 2000.[10] FFIP

--------

[10]These section 988 losses were fully disallowed in the 2000 FPAA.

assigned some of these losses to its partners in 2000 and carried the majority forward to 2001, at which point FFIP assigned the losses to its own partners, one of whom was Mr. DiBiase.[11]   At that time, according to defendant, the losses simultaneously became RRF affected items and FFIP partnership items. For the purposes of assessing Mr. DiBiase, we do not have to decide if the tax is attributable to RRF affected items, because we disagree with defendant's application of the consent agreement.

A consent to extend the time period for the assessment of tax is not a contract but is "a unilateral waiver of a defense by the taxpayer."  *Stange v. United States*, 282 U.S. 270, 276 (1931).  Contract interpretation principles, however, are used by courts when analyzing a taxpayer consent agreement. *See*, *e.g.*, *Ripley v. Comm'r*, 103 F.3d 332, 337 (4th Cir. 1996); *Holof v. Comm'r*, 872 F.2d 50, 52 (3d Cir. 1989).  Therefore, courts look to the "plain meaning" of the agreement to determine what the parties intended.  *See Ripley*, 103 F.3d at 372 (applying the plain meaning of a Form 872 waiver), *United States v. Hodgkins*, 28 F.3d 610, 614 (7th Cir. 1994) ("We give effect to the words in the forms according to their plain meaning, because the plain meaning is the best indication of what the parties intended.").  Courts have also considered that an ambiguity in an agreement between the taxpayer and the IRS is resolved against the latter as drafter of the agreement.  *See Anthony v. United States*, 987 F.2d 670, 674 (10th Cir. 1993) (finding that as drafter of the agreement ambiguity is resolved against the IRS).

The extension agreement was between the IRS and FFIP, signed by Bracebridge as FFIP's tax matters partner.  It is specific in that it only extends the assessment period for "any federal income tax attributable to the *partnership items of the partnership named above* against any partner of the partnership . . . ."  Def. Cross Motion Ex. 5 (emphasis added).   The "partnership named above" refers to FFIP, not RRF.

---

[11]Defendant asserts that FFIP was required under 26 U.S.C. § 6222 to notify the IRS that it was not reporting the losses in the same year as RRF, the partnership that assigned FFIP the losses.  Defendant argues that plaintiffs are attempting to use this violation of the law to avoid being held accountable in this case.  Ms. Zimmerman's 2001 tax return, however, is within the three-year statute of limitations for assessment of additional taxes due to the disputed carry-over.  Regardless, the potential consequences, if there are any, for violating section 6222 are not before us.

Defendant argues that this agreement has suspended the limitations period for Mr. DiBiase's losses attributable to RRF's 2000 section 988 losses. Defendant states that "the suspended losses are affected partnership items - the 2001 partnership items of FFIP affected by the 2000 partnership items of RRF." Def. Cross Motion.   The argument interchanges RRF and FFIP freely in both the statutory scheme as well as the consent agreement.  By its terms the extension agreement does not have any affect on RRF affected items.   The effect of the agreement is limited to extending the assessment period for FFIP partnership items, qua FFIP partnership items.   Therefore, the extension agreement does not assist defendant's attempt to reopen closed tax years based upon the FFIP extension agreement.

Mr. DiBiase filed his 2001 tax return on August 15, 2002.  The RRF FPAA was issued October 14, 2005, more than three years after he filed his 2001 return.  Therefore, Mr. DiBiase's 2001 tax year is closed for assessment under the general three-year statute of limitations.  We thus grant plaintiffs' motion for summary judgment in regard to Mr. DiBiase and the partners he represents.

## CONCLUSION

Plaintiffs' motion is granted in part as to the application of the three-year general statute of limitations to Mr. DiBiase and the partners he represents.  Plaintiffs' motion is denied in part as to Ms. Zimmerman and the partners she represents.   Defendant's motion is granted as to the application of the 2000 RRF FPAA to suspend the statute of limitations period for Ms. Zimmerman's, and the partners she represents, 2001 individual returns. Defendant's motion is denied in part as to Mr. DiBiase and the partners he represents.  The parties are directed to consult with each other and propose a schedule for further proceedings in a joint status report, to be filed on or before November 22, 2011.

s/Eric G. Bruggink

ERIC G. BRUGGINK
Judge